UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA SUE McCLELLAN,

    *Plaintiff*,

v.                            CASE NO. 12-cv-11139

COMMISSIONER OF              DISTRICT JUDGE LAWRENCE P. ZATKOFF
SOCIAL SECURITY,              MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), for Supplemental Security Income ("SSI") benefits, and for Disabled Widow's Benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 12.)

Plaintiff Barbara Sue McClellan was 53 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 45.) Plaintiff's employment history includes work as a bakery clerk for two years, a cashier for six years, a deli clerk for several months, and an office clerk for one year. (Tr. at 199.) Plaintiff filed the instant claims on May 14, 2009, alleging that she became unable to work on April 1, 2004. (Tr. at 147, 172.) The claims were denied at the initial administrative stages. (Tr. at 65.) In denying Plaintiff's claims, the Commissioner considered disorders of back, discogenic and degenerative, and affective disorders as possible bases for disability. (*Id.*) On February 16, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Arthur J. Schultz, who considered the application for benefits *de novo*. (Tr. at 27-39, 41-64.) In a decision dated April 8, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 36.) Plaintiff requested a review of this decision on September 9 and 15, 2011. (Tr. at 9-26.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 24, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On March 14, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making

a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe

5

impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2011, and that Plaintiff had not engaged in substantial gainful activity since April 1, 2004, the alleged

6

onset date.[2] (Tr. at 33.) At step two, the ALJ found that Plaintiff's hypertension, obesity, degenerative disc disease, degenerative joints, depression and anxiety were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 33-34.) At step four, the ALJ found that Plaintiff could perform her past relevant work as a deli clerk, housekeeper, office clerk, bakery clerk and hardware clerk. (Tr. at 36.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 34-36.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 36.)

      **E.**     **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated at Beaumont Hospital from 2003 through 2009. (Tr. at 292-314, 338-645.) An MRI of the cervical spine taken on April 6, 2004, showed "[d]egenerative changes in the spine." (Tr. at 602-03.) On April 7, 2004, x-rays of Plaintiff's cervical spine showed "[d]egenerative changes of the cervical spine" at C3-C4 and C6-C7, but also showed that the "signal intensity of the spinal cord is normal and the craniocervical junction is unremarkable." (Tr. at 600-01.) Plaintiff participated in physical therapy from April through June of 2004. (Tr. at 255-91, 630-45.) On April 15, 2004, it was noted that Plaintiff's rotation, elbow flexion, wrist extension and flexion, thumb extension and grip strength were 4/5 on the left and either 4/5 or 4+/5 on the right. (Tr. at 273.) It was noted that the rotation strength test caused some pain. (*Id.*)

In February 2005, Plaintiff was diagnosed with Meniere's syndrome of the right ear and began treatment. (Tr. at 622-26.)

---

[2] The ALJ also stated that "[i]t was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for Disabled Widow's Benefits set forth in section 202(e) of the Social Security Act." (Tr. at 33.)

On April 23, 2007, x-rays of Plaintiff's lumbosacral spine showed "[s]evere degenerative disc disease of the L5-S1 level without change from the previous" examination on May 11, 2004. (Tr. at 301, 486, 736.) All other areas, including the sacroiliac joints, were normal. (*Id.*)

On August 14, 2008, x-rays of Plaintiff's bilateral hands showed "[d]egenerative changes most marked involving the interphalangeal joints of the first digits bilaterally and minimally at the heads of the first metacarpals," but was "[o]therwise negative[.]" (Tr. at 298, 680.) X-rays of Plaintiff's right hip taken on August 14, 2008, were "negative," but showed "[d]egenerative changes at the lumbosacral junction." (Tr. at 299, 441, 681.)

Plaintiff was also treated at the North Oakland Medical Center from November 2007 through February 2009. (Tr. at 315-37.)

On September 12, 2009, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Andrew Friessen, D.O. (Tr. at 647-50.) Dr. Friessen found "decreased range of motion in the cervical and lumbar spine." (Tr. at 650.) The straight leg raising test was negative and the "Spurling's test was negative." (*Id.*) Although Plaintiff "complained of arthritis in her hands, []this has not been bothering her" and it was noted that her "[g]rip strength and dexterity are intact." (*Id.*)

On September 15, 2009, Plaintiff was examined at the request of DDS Services by Pamela Herringshaw, Ph.D. (Tr. at 653-59.) Dr. Herringshaw diagnosed "Panic Disorder without Agoraphobia" and "Dysthymic Disorder"; she assessed a GAF score of 60 and gave a fair to poor prognosis based on reported medical problems. (Tr. at 659-60.)

A Psychiatric Review Technique ("PRT") completed on September 19, 2009, by Leonard Balunas, Ph.D., diagnosed affective disorders and anxiety-related disorders, i.e., Dysthymic Disorder, and Panic Disorder without Agoraphobia. (Tr. at 661, 664, 666.) Dr. Balunas found that

8

Plaintiff was mildly limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. at 671.) Dr. Balunas noted that Plaintiff "does not allege significant limitations in any domain due to mental impairment. Mental impairments are not severe." (Tr. at 673.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on September 18, 2009, concluded that Plaintiff is able to occasionally lift 20 pounds, frequently lift 10 pounds, stand for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and was unlimited in her ability to push or pull. (Tr. at 67.) The assessment also concluded that Plaintiff should never climb ropes, ladders or scaffolds and should only occasionally be required to climb stairs, but that no manipulative, visual, or communicative limitations were established. (Tr. at 68-70.) The only environmental limitation established was that Plaintiff should avoid hazards. (Tr. at 70.) The assessment also found Plaintiff to be "not entirely credible" because she "does not have medical findings to support the severity that she suggests." (Tr. at 71.)

At the administrative hearing, Plaintiff testified that in 2009 she did some "substitute cleaning for a cleaning company" a "couple hours a night" for a "couple nights a week" for about five months. (Tr. at 46-47.) In 2010, Plaintiff worked doing "light housekeeping" in a retirement home for a "couple months" but then got fired because she "missed too many days in [her] probationary period." (Tr. at 48-49.) Plaintiff was working 24 to 28 hours a week. (Tr. at 48.) At the time of the hearing, Plaintiff had been working for two months at Independence Village for 16 to 24 hours per week doing light housekeeping. (Tr. at 49-50.) Plaintiff indicated that her job included emptying trash, dusting, vacuuming and mopping. (Tr. at 51.) Counsel agreed with the ALJ that, at the time of the hearing, Plaintiff was performing light to medium work part-time that did not rise to the level of substantial gainful activity ("SGA"). (Tr. at 52.) Plaintiff testified that

9

she was registered at "Michigan Works" and that she was available to work full-time. (Tr. at 57.)

Plaintiff stated that her Meniere's Disease "makes me dizzy, and when the dizziness starts, the vertigo, I get nauseated. And then it makes the dizziness even worse, because I'm vomiting. It causes me to have anxiety, panic attacks." (Tr. at 53.) Plaintiff indicated she has such attacks four or five times a month and that they last for "[h]ours." (*Id.*) Plaintiff stated that when this happens, she takes her medication and goes to bed. (*Id.*) Plaintiff added that her degenerative disc disease in her neck causes her right arm and hand to go numb and causes pain on a daily basis. (Tr. at 54.) She also testified to pain in her hips that causes her left leg to go numb after walking, standing, or sitting for too long, i.e., longer than 15 to 20 minutes. (Tr. at 55.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual who

> could lift or carry 20 pounds occasionally, 10 pounds frequently. Sit six hours per day, stand and walk six hours. Never climb ladders or ropes. Occasionally stoop, kneel, crouch or crawl. Would have the ability to understand, remember and follow simple and detailed instructions, complete repetitive tasks.

(Tr. at 60.) The VE responded that such a person could perform Plaintiff's past work as a deli clerk and office clerk, also the bakery clerk and hardware stores sales generally, but not as performed by Plaintiff in the past. (Tr. at 60-61.) The VE added that if someone were to miss two days or more per month, full-time work would be precluded. (Tr. at 61.)

### F.      Analysis and Conclusions

#### 1.      Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work with some nonexertional limitations. (Tr. at 34-36.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's RFC findings were not supported by substantial evidence (Doc. 8 at 17-20), that the ALJ was biased because "[t]he fact that he denies nearly 75% of all claims he presides over, further lessons [sic] his credibility as a fair, reasonable and impartial adjudicator" (*id*. at 20), and that the ALJ committed legal error in failing to find Plaintiff was capable of, at most, sedentary work, which would entitled her to an award of benefits under Medical Vocational Guideline (the "Grid") 201.10. (*Id*. at 7-9.)

### a. ALJ Partiality

11

Plaintiff argues that the ALJ was biased because "[t]he fact that he denies nearly 75% of all claims he presides over, further lessons [sic] his credibility as a fair, reasonable and impartial adjudicator." (Doc. 8 at 20.) The courts have long applied the presumption "that judicial and quasi-judicial officers, including ALJs, carry out their duties fairly and impartially." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011); *see also Schweiker v. McClure,* 456 U.S. 188, 195, 102 S. Ct. 1665, 1670, 72 L. Ed. 2d 1 (1982). The Sixth Circuit has explained that

> [t]he burden of overcoming the presumption of impartiality "rests on the party making the assertion [of bias]," *Schweiker,* 456 U.S. at 196, 102 S. Ct. at 1670, and the presumption can be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975). In other words, any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference.

*Navistar Intern. Transp. Corp. v. U.S. E.P.A.,* 941 F.2d 1339, 1360 (6th Cir. 1991).

In the instant case, Plaintiff does not point to any particular conduct or comments made by the ALJ at the administrative hearing. Instead, Plaintiff relies on the outcome of the case and the "fact" that the ALJ denies 75% of the claims brought before him. Even if there were some evidence supporting this statistic, statistical evidence alone is inadequate to establish bias. *Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011) (collecting cases). I further suggest that bias is not evident from the record and, since bias cannot be based on speculation or inference, Plaintiff has failed to rebut the presumption of fairness and impartiality. *See Bailey*, 413 F. App'x at 856. I therefore suggest that the ALJ's findings are not undermined by Plaintiff's allegation of bias.

    **b.**    **RFC Analysis and Medical Vocational Guideline 201.10**

I suggest that the ALJ's RFC analysis is supported by substantial evidence. The ALJ properly incorporated the limitations specified in the RFC assessments when he limited the range of light work to preclude climbing ladders or ropes, which would accommodate Plaintiff's

Meniere's syndrome. (Tr. at 60, 68-70.) In addition, the ALJ's finding is supported by the Assessor's finding that Plaintiff was "not entirely credible" because she "does not have medical findings to support the severity that she suggests." (Tr. at 71.) I further suggest that although Plaintiff has several impairments, the objective medical evidence does not show any impairments to be disabling. Despite degenerative changes in the spine, "signal intensity of the spinal cord is normal and the craniocervical junction is unremarkable." (Tr. at 600-01.) Plaintiff's upper extremity strength was consistently normal and in the high range, despite arthritis. (Tr. at 273, 650.) Although Plaintiff was diagnosed with psychological impairments, she was assessed a GAF score of 60 (Tr. at 659-60) and was found to be only mildly limited in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. at 671.) Dr. Balunas noted that Plaintiff "does not allege significant limitations in any domain due to mental impairment" and that her "[m]ental impairments are not severe." (Tr. at 673.)

Plaintiff was not treated for any mental impairments and was only treated with prescription medications for her physical impairments. Such modest treatment is inconsistent with a finding of disability. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that she was performing light to medium work, albeit on a part-time basis, at the time of the administrative hearing (Tr. at 52) and that she maintained registration at "Michigan Works" which indicated that she is available to work full-time. (Tr. at 57.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The Commissioner correctly notes (Doc. 12 at 18) that since the ALJ determined Plaintiff could return to her past work, he did not need to proceed to step five and that the Grids, such as Guideline 201.10, are only applicable at step five. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.000(a). However, even if the ALJ had proceeded to step five, the result would be the same. If the ALJ's RFC finding of Plaintiff's ability to perform light work is proper, then Medical Vocational Guideline 201.10 does not apply because it only applies when the RFC is sedentary work. Since I suggest the ALJ's RFC analysis was supported by substantial evidence, I further suggest that the ALJ properly declined to apply Guideline 201.10. *See Figures v. Comm'r of Soc. Sec.*, No. 1:10-CV-430, 2011 WL 4706193, at *8 (W.D. Mich. Aug. 12, 2011) ("[T]he ALJ found that Plaintiff was capable of performing a limited range of light work. This determination is supported by substantial evidence of record. Accordingly Rule 201.10 [] is inapplicable in this matter.").

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d

590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                                CHARLES E. BINDER
Dated: January 10, 2013                          United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 10, 2013                        By     s/Patricia T. Morris
                                                                 Law Clerk to Magistrate Judge Binder